IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JEAN-MARC FAISON, )
)
    Plaintiff, )
)
v. ) Case No. 3:16-cv-598-NJR-DGW
)
KIMBERLY S. BUTLER, SERGEANT )
DILLINGHAM, LIEUTENANT HELD, )
)
    Defendants. )

**ORDER**

**WILKERSON, Magistrate Judge:**

Now pending before the Court is the Motion for Order Compelling Discovery filed by Plaintiff Jean-Marc Faison, on July 21, 2017 (Doc. 49), the Motion for Issuance of Subpoenas filed by Plaintiff on August 24, 2017 (Doc. 53), the Motion to Stay filed by Defendants on October 13, 2017 (Doc. 54), and the Motion for Status filed by Plaintiff on January 30, 2017 (Doc. 55).

Plaintiff seeks complete answers to identical interrogatories that he served upon all Defendants, namely ## 3, 6, 9, 10, and 11. Plaintiff is entitled to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed.R.Civ.P. 26(b). This Court has broad discretion in compelling discovery. *Hart v Mannina*, 798 F.3d 578, 597 (7th Cir. 2015). In this matter, Plaintiff is proceeding on four Counts:

> **Count 1:** First Amendment claim of retaliation for Defendant Held's firing of Plaintiff from the law library after Plaintiff refused to prevent other inmates from library access;
>
> **Count 2:** First Amendment claim of retaliation for Defendants Held and Dillingham's transfer of plaintiff to the North 2 cell house as added punishment for the library incident;

**Count 3**: Conspiracy claim against Defendants Held and Dillingham for the firing and housing transfer of Plaintiff;

**Count 4**: Eighth Amendment deliberate indifference to cruel and unusual conditions of confinement claim for conditions of the North 2 cell house as it relates to Defendant Butler's failure to address Plaintiff's emergency grievance.

(Doc. 12).

Plaintiff's claims arise from an incident that began in the Fall of 2014 when he was allegedly fired from a prison law library job by Defendant Held in retaliation for his refusal to comply with a scheme to prevent certain inmates from using the law library. Held, along with Dillingham, then conspired to place him in an undesirable part of Menard CC, which Plaintiff describes as a "modified Tamms" area, housing the most violent and predatory inmates. While in that location (the North II cellhouse, gallery 7) for a 6 months period, Plaintiff allegedly suffered unconstitutional conditions of confinement which resulted in the exacerbation of his mental illness. Finally, he claims that Warden Butler ignored his grievances about the conditions.

Interrogatory 3 asks whether Defendants have been the subject of any prior lawsuits. Such information is irrelevant to this lawsuit and additional answers will not be compelled.

Interrogatory 6 seeks the names of "inmates housed in North II on seven gallery in cells 1-10 during the year 2013 who were just released from Tamms Super Max facility." In response, Defendants state that information on inmates housed in that location is irrelevant to Plaintiff's claims because he was housed there in late 2014 and 2015. They further indicate that they are unaware of the identity of any such inmates and that the records do not reflect which inmates were housed in those cells who were previously released from Tamms. While the Court finds that such information can be discerned from, perhaps, looking at two types of records, the housing records for the particular cells and then transfer documents, the Court will not compel any additional answers. Plaintiff claimed that the conditions of his cell in North II cellhouse when he was moved

there in *late 2014* were unconstitutional. The occupants of those cells in 2013 are irrelevant to this claim.[1]

In interrogatory 9, Plaintiff seeks information on inmates located in the North II cellhouse, seven gallery, who are "sexual predators," who have killed other inmates, or those labeled as homosexuals from December 2014 to 2015. Defendants objected on relevance grounds noting that Plaintiff's conditions of confinement claim does not involve the proximity to such individuals. Defendants further responded by stating that inmates are not placed in such classifications and that their "living unit histories" do not include such information. These objections are sustained. It is unclear how these classifications are relevant to Plaintiff's claims of unconstitutional conditions of confinement. There is no claim that Plaintiff was subjected to violence at the hands of other inmates or that he was housed with a person who could be placed in such a category. Plaintiff's claims of psychological relapse as a result of the *events* that transpired in his housing unit (the light, noise, and other disturbances) are not related to whether any *particular inmate* is labeled a predator or homosexual.

Interrogatory 10 seeks the information on those inmates who were on suicide watch or who required immediate mental health treatment in cells 1-10 below Plaintiff's cell during the relevant 6 month time period. Defendants objected, stating that a response would be unduly burdensome, disproportionate to the needs of this case, would require searching through individual medical records of each inmate housed in the cells identified, and would implicate privacy concerns of the inmates involved. Defendants nonetheless answer that on gallery 5 (below where Plaintiff was housed) only cells 3-7 were "crisis cells." The Court notes that Plaintiff does not wish to know the individual mental health history, just an aggregate number of times someone was placed on

---

[1] The Court does not assume that Plaintiff meant 2015 because of the modifier "just" – Tamms was closed in January, 2013.

suicide watch, investigation, or who required immediately mental/medical health care or removal from the cells. Plaintiff requires this information to support his claim that he was subjected to sensory and noise disturbances from those very cells (which were beneath his cell).

Defendants have not provided any specific detail as to how a response to this interrogatory would be burdensome. There is no showing that they would be required to pour through hundreds of mental health records to provide the aggregate information that Plaintiff seeks. Defendants shall provide a more full response to this interrogatory and indicate:

1. How many persons occupied cells 3-7 on gallery 5, North II cellhouse during the relevant time period (December 2014 to June 2015).
2. Whether any of those persons were (a) placed on suicide watch; (b) investigation; (c) required immediate or emergency response from mental or medical health personnel; or (d) needed immediate removal from those cells because they were committing self-harm or harm to others.

Defendants need not provide any identifying information as to these individuals. Defendants shall file this information, and any other information responsive to Plaintiff's interrogatory, within 30 days of the date of this Order.

Finally interrogatory 11 seeks information on windows, cameras, and the monitoring of those cameras on the North II cellblock. Defendants answered that there are windows on the wall across from the gallery, that the cells have open bars and that cameras are in place and operational. In seeking additional responses, Plaintiff merely has a disagreement with the answer (he states there were no windows in his direct view from his cell). Such a disagreement would not warrant an additional response. Second, the obvious security implications of allowing an inmate access to information regarding video monitoring cautions against an additional response.

In light of the foregoing, Plaintiff's motion to compel is **GRANTED IN PART and DENIED IN PART** (Doc. 49). To the extent that Plaintiff requests additional relief by his motion, such requests are **denied without prejudice**.

Plaintiff has submitted three subpoenas for review. *See* Fed.R.Civ.P. 26(b)(2)(C), 45(c); *Marozsan v. United States,* 90 F.3d 1284, 1290 (7th Cir.1996) (the Court has an obligation to protect persons subject to a subpoena and may preview subpoenas in order to ensure the Court's subpoena power is not being abused).

The first subpoena is directed to the current warden of Menard, Jacqueline Lashbrook, and seeks:

> Any documents in regards to modifications made on the N2 seven gallery side (1-10) along with photographs etc.

Plaintiff directs that the information be sent to the Clerk of Court and to himself. He requires an inspection of the location within 14 days of receipt of the subpoena. This subpoena will not be issued. There is no date limitation on the subpoena and is it is overly broad. It is also unclear how this information is relevant to the claims in this case. As the subpoena does not comply with Rule 26, the Clerk will not issue the same.

Plaintiff next seeks to issue a subpoena directed at Jill Wehrheim, the inmate records custodian at Menard, and seeking:

> Documents, information regarding Plaintiff and his master file as well as the placement of inmate from South Uppers as a law clerk Dec. 2014, i.e. His termination, placement subsequently in North II 708 from Dec. 2014 – June 2015 along with a list of those inmates in North II on seven gallery at that time whom were in administrative detention, had existing lawsuits, to dangerous [unreadable] cellmates, sexual predators and any I.A. files on inmate at that time (Dec. 2014-June 2015).

It is unclear to the Court, and would be unclear to Ms. Wehrheim what, exactly, Plaintiff is seeking. The request is confusing as written. If Plaintiff requires his own Masterfile, it is

unclear how that (entire) document would be relevant to this matter. If Plaintiff seeks paperwork regarding this transfer from the South Uppers to North II, and documents surrounding the events outlined in the complaint, such documents should have been provided through initial disclosures. Finally, Plaintiff is not entitled to the files of other inmates or internal affairs files of those inmates. Such information, in addition how those inmates may be considered or classified as predators as set forth above, is irrelevant to his claims. This subpoena also does not comply with Rule 26 and shall not be issued by the Clerk.

The final subpoena is directed to Lori Oakley of the Administrative Review Board, and seeks:

> Any/all document regarding Plaintiff in regards to his allegations where you "contacted staff" and were able to substantiate claims any/all docs, reports.

This subpoena is vague as written. There is no date limitation and it is not clear that Ms. Oakley (who is not a defendant herein) would be familiar with Plaintiff or "his allegations." This subpoena also does not comply with Rule 26. Indeed, it is directed at the wrong person. Attached to his amended complaint is the grievance response to which Plaintiff refers (Doc. 8, p. 22). In that response, by grievance officer Marvin Bouchantin, it is noted that "grievance office contacted staff and was able to substantiate allegations." This subpoena, then, should have been directed to a relevant person at the prison and not the ARB. In order to move these proceedings along, Defendants are directed to provide to Plaintiff any documents, e-mails, or correspondence or other communication related to the grievance officer's investigation into Plaintiff's May 19, 2015 grievance (Doc. 8, pp. 20-23). Such documents shall be provided within 30 days of the date of this Order.

Based on the foregoing, Plaintiff's motion for issuance of subpoena is **DENIED WITHOUT PREJUDICE** (Doc. 53). Plaintiff may refile his proposed subpoenas. In doing so,

Plaintiff shall provide a more clear statement of the documents that he wants, he should indicate that the documents should be sent to him, and not the Clerk of Court, and he should note that he is proceeding pro se (as oppose to being represented by the Assistant Attorney General as stated at the bottom of the first page of the subpoenas). Plaintiff may attach a separate sheet of paper with the subpoena that would list the documents that he wants instead of squeezing in that information on the first page of the subpoena. Plaintiff is reminded that he must provide specific dates and that he should only request documents relevant to this lawsuit.

This matter currently is set for trial on November 13, 2018. Therefore, the discovery deadline is extended to **April 30, 2018** and the dispositive motion filing deadline is extended to **May 15, 2018. These deadlines will not be extended. To the extent that either party wishes to do additional discovery, it shall be completed by the deadline.** The telephonic pretrial conference is **RESET** to **October 4, 2018 at 2:30 p.m.** The remaining two motions (Docs. 54, and 55) are **MOOT**.

**IT IS SO ORDERED**

**DATED: February 1, 2018**

                                              **DONALD G. WILKERSON**
                                              **United States Magistrate Judge**